KENNÓN, Judge.
Plaintiff is the owner of farm lands in Bossier Parish, Louisiana, approximately 160 acres of which lie south of and adjacent to the Illinois Central right-of-way near Haughton, Louisiana. On February 7, 1949, he entered into an agricultural lease with one Elmer Hickman, who agreed to plant twenty-five acres of this Jones farm in cotton, fifteen acres in corn, and to pay Jones one-third of the corn and one-fourth of the cotton as rent. Eleven days later, plaintiff entered into a contract with Elmer Hickman’s brother, Perry, wherein he leased to Perry Hickman, for a cash consideration of $100.00, all the tillable land in this farm and south of the railroad, “not previously leased to Elmer Hickman.”
In September, 1949, plaintiff filed the present suit against both Elmer and Perry Hickman, asking that his lessor’s rights be recognized to the extent of one-fourth of all the cotton harvested from the land described in the two above mentioned leases. The basis of plaintiff’s claim is that no cotton was planted by Perry Hickman either in person or through subtenants,, but that all cotton planting on plaintiff’s land was by Elmer Hickman, whose lease specified a one-fourth rental. The petition further recited that Perry Hickman had taken possession of the cotton crop, planted and raised by his brother, Elmer Hickman, and was in process of having same gathered with the intent to dispose of the cotton as his own, and further that Perry Hickman ■had brought suit against his brother Elmer Hickman seeking judgment recognizing Perry Hickman as owner of the entire .cotton crop on the land in question.
The two defendants filed separate exceptions of no cause or right of action and separate answers.
Five bales of cotton, in the possession of Perry Hickman, were seized under writ of provisional seizure and released to him on ■his furnishing forthcoming bond in accordance with law. Prior to judgment, the controversy was' settled as between plaintiff and Elmer Hickman.
Perry Hickman in answer set forth that two of the five bales of cotton seized were produced as a result of farming operations by him on lands located in an adjoining parish and that the other three bales provisionally seized had been raised by Perry Hickman on that portion of plaintiff’s land that was not “farmed by Elmer Hickman” and therefore covered by the $100.00 cash lease from Jones to Perry Hickman.
In the alternative, and in the event the ■Court should find that the seized cotton was harvested from crops planted by Elmer Hickman, defendant Perry Hickman asked that he be given credit for the $100.-00 cash rent paid to Jones for the year 1949, and concluded with the prayer that Jones’ demands be rejected and that Perry Hickman be awarded $75.00 as attorney’s fees as a result of the illegal seizure.
The District Court rendered judgment rejecting plaintiff’s demands as' to two bales of cotton alleged by Perry Hickman to have been harvested from lands not owned by plaintiff, and recognizing plaintiff’s ownership of the undivided one-fourth interest in the three bales of cotton har *396 vested from the Jones farm. 'From this judgment, Perry Hickman prosecutes the present- appeal. ••
' In'évidence is a copy of the petition filed on September 7, 1949 by Perry Hickman against Elmer Hickman in which it was alleged that Perry Hickman was the owner of the cotton crop located on approximately forty-five acres of the C. N. Jones farm covered by the two February leases from Jones to Elmer and Perry Hickman. The petition further set forth that Elmer Hickman had unlawfully taken possession of this crop and prayed that the crop be sequestered and after proceedings that Elmer Hickman be ordered to deliver possession thereof to Perry Hickman. This controversy between the Hickmans still existed, apparently, at the time plaintiff filed the' present suit, as evidenced by the testimony of Mr. McKellar, a Deputy Sheriff of Bossier Parish, who testified that Elmer Hickman told him (about the time of the Jones .seizure) that he, Elmer, owned, all of the cotton planted on the Jones place south of the I. C. Railroad, and that he had borrowed a tractor from his brother in exchange for work done by himself and his wife on his brother’s place (from which the other two seized bales were harvested). This' testimony was corroborated by that of .another witness in the sheriff’s office at the time the conversation occurred.
Elmer Hickman in. 1948 was participating in the Veterans’ Administration farm training program. Mr. A. L. Knighton, supervisor of the veterans’ farm training program, testified that he walked over Elmer Hickman’s farm with -him and that Elmer claimed all of the cotton on the Jones farm that was south of the railroad and on both sides of the gravel road through the Jones farm. Mr. Knighton estimated this crop of cotton at twenty-five acres. This twenty-five acre estimate of the total crop of cotton is identical with that of the agricultural teacher at the nearby Haugh-ton High School.
Evidently the two brothers settled their differences before Elmer Hickman filed his answer in the present' suit, which set forth that the cotton seized was grown on land rented by Perry Hickman from CN. Jones and in which he, Elmer Hickman, had no interest, and further set forth that his own rent to C. N. Jones had been settled by delivery of a one-fourth portion of the proceeds from cotton harvested by him from the portion of the Jones farm which he. had cultivated.
He gave similar testimony on the trial of the case, but this testimony is impeached by a positive proof of statements made to numerous other parties that he, Elmer Hickman, owned the entire cotton crop that was planted on the south of the railroad portion of the Jones farm.
Thirty-five to forty acres.of the Jones land south of the railroad had been cultivated in 1948 and a study of the record as a whole leads to the conclusion that this was the land intended by Jones and Elmer Hickman to be put into 1949 cultivation under the February 7th lease wherein Elmer Pliclonan agreed to plant twenty-five acres of cotton and fifteen acres of corn. There was other land on the portion of the Jones farm south of the railroad that had once been in cultivation but which had been in disuse for several years, and, evidently, it was the land in this category that was described in the Jones-Perry Hickman lease as being “not previously leased to Elmer Hickman.”
Perry Hickman, on cross-examination, admitted that, at the time his lease with Jones was signed, he knew his brother, Elmer Hickman, had previously leased forty acres of land from Mr. Jones and that approximately thirty-five acres of the property had been in cultivation in 1948. There is no evidence that other portions of the Jones tract were not available to Perry Hickman for cultivation .had he chosen to exercise his rights under his lease from Jones. Hence, his demand for the return of the $100.00 rental paid was properly denied.
Only a question of fact is involved. The preponderance of the testimony is in accord with the finding of the District Court, namely, that two bales of the seized cotton came from lands not owned by *397 plaintiff, and that the other three bales seized came from that portion, of the Jones farm, which was under cultivation in 1948 and leased to Elmer Hickman for the year 1949. ,
The judgment is affirmed, with costs.